# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| JANICE R. SCHONEWOLF, as Administrator of the Estate of William Harry Schonewolf, III, | : : : : | CIVIL ACTION |
| Plaintiff, | : : | No. 17-3745 |
| v. | : : | |
| WASTE MANAGEMENT, INC., | : : | |
| Defendant. | : : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                              **MARCH 19, 2018**

       Former Plaintiff William H. Schonewolf ("Schonewolf") had a heart attack on December 25, 2015 that rendered him unable to return to work immediately. His employer, Defendant Waste Management, Inc. ("Waste Management"), allegedly fired him just two weeks later. This action followed, in which he asserts claims under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951-963.

       Schonewolf died during the pendency of this action.[1] Waste Management now moves to dismiss Schonewolf's claims under the ADA and ADEA (Counts III through VI) on the basis that they are time-barred. It further moves to dismiss claims of liquidated and punitive damages

---

[1] On January 12, 2018, the Court issued an Order allowing Janice R. Schonewolf, who was appointed administrator of Schonewolf's estate, to be substituted as Plaintiff in this matter pursuant to Federal Rule of Civil Procedure 25. For ease of use, we will refer to William H. Schonewolf and Janice R. Schonewolf as "Schonewolf" and will utilize the personal pronouns "him" and "he."

on the grounds that they extinguished upon Schonewolf's death. For the reasons noted below, Waste Management's Motion for Partial Dismissal is granted in part and denied in part.

I. BACKGROUND

Schonewolf began working at Waste Management as a Plant Maintenance Manager in June 2014.[2] (Compl. ¶ 11.) On December 25, 2015, he suffered a heart attack. (*Id.* ¶ 17.) Over the next few days there was communication over the telephone between Schonewolf and Waste Management regarding the former's need to go on disability leave. (*Id.* ¶ 18(a)-(b).) On December 28, 2015, Schonewolf's physician submitted information to Waste Management to initiate FMLA leave and short-term disability. (*Id.* ¶ 18(c).) The next day, Sedgwick Claims Management Services, Inc., Waste Management's administrator for FMLA leave, notified Waste Management that Schonewolf requested leave from December 23, 2015 until January 19, 2016. (*Id.* ¶ 18(d).) Waste Management acknowledged the request for FMLA leave and requested that Schonewolf submit a "Medical Authorization for Release of Information Form" and a "Certification of Health Care Provider (Medical Certification) Form" by January 13, 2016. (*Id.* ¶ 18(e).)

Schonewolf went to his physician's office for testing on January 8, 2016. (*Id.* ¶ 19.) While he was in the physician's office for the medical testing, he received a call from a representative from Waste Management's Human Resources Department notifying him that his employment was terminated and that his medical benefits ended effective January 7, 2016. (*Id.* ¶ 20.) Schonewolf alleges Waste Management replaced him with a significantly younger individual. (*Id.* ¶ 29.)

---

[2] We take the facts alleged in the Complaint as true, as we must when deciding a motion under Federal Rule of Civil Procedure 12(b)(6). *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation omitted).

Schonewolf timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 2(a).) On February 28, 2017, the EEOC issued a Dismissal and Notice of Rights ("right-to-sue letter") to Schonewolf. He alleges that he never received the right-to-sue letter and did not actually have notice of it until June 20, 2017, when the EEOC responded to his counsel's inquiry as to the status of the Charge of Discrimination. (*Id.* ¶ 2(b)-(d).)

Schonewolf filed suit in this Court on August 21, 2017. He specifically alleges that the ninety-day filing period should be equitably tolled because he did not have actual notice of the EEOC's right-to-sue letter until June 20, 2017. (*Id.* ¶ 2(f).) Waste Management moves to dismiss the ADA and ADEA claims on the basis of timeliness, and it seeks dismissal of all liquidated and punitive damages under the FMLA, ADA, and ADEA on the basis that they extinguished upon Schonewolf's death.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted). However, courts need not "accept mere[] conclusory factual

allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678-79). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).

### III. DISCUSSION

As indicated above, Waste Management seeks dismissal of Schonewolf's ADA and ADEA claims, as well as claims for liquidated and punitive damages under the FMLA, ADA, and ADEA. Because Waste Management seeks dismissal of the ADA and ADEA claims in their entirety on timeliness grounds, we will first address that aspect of its Motion and will then proceed to determine whether any remaining liquidated and punitive damages survive.

    **A.**    **The ADA and ADEA Claims (Counts III through VI)**

        **1.**    *Timeliness*

Under the ADA and ADEA, a plaintiff must file suit within ninety days of receiving a right-to-sue letter from the EEOC. *See Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 n.4 (3d Cir. 2003) (citing 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice [by the EEOC,] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved.")); *McCray v. Corry Mfg. Co.*, 61 F.3d 224, 227 (3d Cir. 1995) (quoting 29 U.S.C. § 626(e)) (stating that under the ADEA "[a] civil action may be brought under this section . . . against the respondent named in the charge within 90 days after

4

the date of the receipt of such notice"); *see also* 42 U.S.C. § 12117(a) (stating that the "powers, remedies, and procedures" set forth in § 2000e-5 apply to ADA claims).

"The statutorily-created ninety-day period starts when either the claimant or her attorney receives a right-to-sue letter, whichever is earlier." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 n.1 (3d Cir. 1999) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92-93 (1990)). "When the actual date of receipt is known, that date controls." *Id.* at 239 (citations omitted). "However, in the absence of other evidence, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it." *Id.* (citing Fed. R. Civ. P. 6([d]); *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 n.2 (3d Cir. 1986)). "There is a presumption that a right-to-sue letter properly mailed is not only received by the addressee, but also is received in the due course of the mails." *Loftin v. N.Y.S. Dep't of Mental Health*, No. 02-4532, 2003 WL 221767, at *1 (S.D.N.Y. Jan. 31, 2003) (citing *Battaglia v. Heckler*, 643 F. Supp. 558, 559-60 (S.D.N.Y. 1986)). The United States Court of Appeals for the Third Circuit has "strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

Schonewolf specifically pleads that the EEOC issued the right-to-sue letter on February 28, 2017, (Compl. ¶ 2(b)); however, he did not commence suit until August 21, 2017. After applying the three-day presumption in Federal Rule of Civil Procedure Rule 6(d), it is clear that his ADA and ADEA claims were filed well in excess of ninety days and are thus untimely.

### 2. *Equitable Tolling*

Recognizing that his ADA and ADEA claims are subject to dismissal as time-barred, Schonewolf pleads the doctrine of equitable tolling on the basis that he never received the right-

5

to-sue letter and "did not have actual notice of the EEOC's issuance of the [right-to-sue letter] until June 20, 2017." (*Id.* ¶ 2(c), (f).)

The doctrine of equitable tolling operates to save an otherwise untimely claim when a plaintiff has "been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) (quoting *Seitzinger*, 165 F.3d at 240). "The remedy of equitable tolling is extraordinary" and is used "only sparingly." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (citing *Irwin*, 498 U.S. at 96). There are generally three circumstances where equitable tolling is appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* (quoting *Hedges*, 404 F.3d at 751; *School Dist. v. Marshall*, 657 F.2d 16, 19-20 (3d Cir. 1981)). Moreover, a plaintiff will only receive the benefit of equitable tolling if he or she "exercised due diligence in pursing and preserving [the] claim." *Id.* (citing *Irwin*, 498 U.S. at 96).

The Third Circuit has cautioned that "because the question [of] whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301-02 (3d Cir. 2010) (citing *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006); *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004)). Indeed, equitable tolling is typically reserved for disposition on summary judgment because the application depends on matters outside of the pleadings. *See Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997) (citing *Oshiver v. Levin, Fishbein,*

*Sedran & Berman*, 38 F.3d 1380, 1391-92 (3d Cir. 1994); *Hornsby v. U.S. Postal Serv.*, 787 F.2d 87, 89 (3d Cir. 1986)).

Schonewolf pleads the doctrine of equitable tolling and argues its application because there was inadequate notice of the right-to-sue letter. (Compl. ¶ 2; Pl.'s Mem. of Law in Opp'n Def.'s Mot. Summ. J. 5.) In an abundance of caution, we will allow the claims to proceed at this juncture and permit Schonewolf the opportunity to procure evidence rebutting the presumption that he received the right-to-sue letter three days after its mailing date. Accordingly, Waste Management's Motion is denied as to the dismissal of the ADA and ADEA causes of action.

### B. Liquidated and Punitive Damages

Schonewolf seeks liquidated damages in his FMLA claims (Counts I and II), whereas his claims under the ADA (Counts III through V) and the ADEA (Count VI) seek liquidated and punitive damages. Waste Management moves to dismiss all liquidated and punitive damages under those statutes on the basis that they extinguished upon Schonewolf's death. In response, Schonewolf concedes that liquidated and punitive damages under the ADA and ADEA are no longer available. (Pl.'s Mem. of Law in Opp'n Def.'s Mot. Partial Dismiss 6 n.2.) Accordingly, the requests for liquidated and punitive damages under the ADA and ADEA are dismissed with prejudice, and we will confine the remainder of our analysis regarding whether liquidated damages under the FMLA extinguished upon Schonewolf's death.

"When a federal statute is silent upon the issue of survival, federal common law determines whether the claim survives or abates upon the death of one of the parties." *Confederation Life Ins. Co. v. Goodman*, 842 F. Supp. 836, 837 (E.D. Pa. 1994) (citing *Carlson v. Green*, 446 U.S. 14, 23 (1980)); *Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 702 (D.N.J. 1996) (citing *Ex parte Schreiber*, 110 U.S. 76, 80 (1884)). Under federal common law, remedial

claims survive the death of a plaintiff, whereas claims that are penal in nature are terminated. *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 109 (3d Cir. 2017) (citations omitted); *see also Green ex rel. Estate of Green v. City of Welch*, 467 F. Supp. 2d 656, 665 (S.D. W. Va. 2006) (citing *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993)); *U.S. ex rel. Estate of Botnick v. Cathedral Healthcare Sys., Inc.*, 352 F. Supp. 2d 530, 532 (D.N.J. 2005) (citing *Schreiber*, 110 U.S. at 76); *Smith v. Dep't of Human Servs., State of Okl.*, 876 F.2d 832, 834-35 (10th Cir. 1989) (citing *Schreiber*, 110 U.S. at 76; *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 414 (7th Cir. 1980), *overruled on other grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182, 194 (7th Cir. 1982)). The FMLA is silent on the issue of survivability of liquidated damages. Therefore, consistent with federal common law, the issue before the Court is whether liquidated damages under the FMLA are remedial or punitive in nature.

To begin, the enforcement provision of the FMLA provides that an employer "shall be liable" for damages in the amount equal to "any wages, salary, employment benefits, or other compensation denied or lost" due to the violation (including interest at the prevailing rate), as well as an additional amount as liquidated damages equal to the wages, salary, employment benefits, or other compensation that the employee lost (including interest at the prevailing rate). 29 U.S.C. § 2617(a)(1)(A)(i)-(iii). In effect, the award of liquidated damages doubles the amount of back pay the employee receives. The district court has discretion to reduce the amount of liquidated damages if the employer proves the violation was "in good faith and that the employer ha[d] reasonable grounds for believing that the act or omission was not a violation" of the FMLA. *Id.* § 2617(a)(1)(A)(iii). The Third Circuit has not addressed whether the FMLA's liquidated damages provision is remedial or penal. However, a landscape of the case

8

law, other related statutes, and an analysis of the FMLA's legislative history convinces the Court of their remedial nature.

Due to the similarity of their damages provisions, a number of courts have looked to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, for guidance in interpreting FMLA damages. *See Arban v. W. Pub. Corp.*, 345 F.3d 390, 408 (6th Cir. 2003) (citing *Frizzel v. Sw. Motor Freight*, 154 F.3d 641, 644 (6th Cir. 1998)); *Jordan v. U.S. Postal Serv.*, 379 F.3d 1196, 1201 (10th Cir. 2004) (citing S. Rep. No. 103-3, at 35 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 37 (providing that the FMLA's "enforcement scheme is modeled on the enforcement scheme of the FLSA" and "[t]he relief provided in FMLA also parallels the provisions of the FLSA")); *see also Bowyer v. Dish Network, LLC*, No. 08-1496, 2010 WL 629830, at *3 n.4 (W.D. Pa. Feb. 19, 2010) (citing *Thorson v. Gemini, Inc.*, 96 F. Supp. 2d 882, 890 (N.D. Iowa 1999) (stating that Congress intended the remedies provisions of the FMLA and FLSA to mirror each other)).

Liquidated damages under the FLSA are compensatory, rather than punitive, in nature. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 708 (1945) (citation omitted); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991) (quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982)); *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (citation omitted); *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 548 (4th Cir. 1998); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (citations omitted); *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 814 (W.D. Pa. 2013) (citing *Brooklyn Sav.*, 324 U.S. at 707). The Supreme Court of the United States has reasoned that FLSA liquidated damages are compensatory because they constitute "compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated

damages." *Brooklyn Sav.*, 324 U.S. at 707 (citation omitted). Further, liquidated damages under the FLSA are mandatory unless the employer carries its burden of showing good faith and a reasonable basis for its conduct. *See* 29 U.S.C. §§ 216(b), 260; *see also Selker Bros.*, 949 F.2d at 1299.

We conclude that liquidated damages under the FMLA are remedial, as is the case in its FLSA counterpart. Indeed, the FMLA was modeled after the FLSA, and the two statutes have damages provisions that are substantially similar. *Compare* 29 U.S.C. §§ 216(b), 260, *with* 29 U.S.C. § 2617; *see also Jordan*, 379 F.3d at 1201-02. It is of extreme significance that liquidated damages under the FMLA are mandatory unless the employer acted in good faith and had a reasonable basis for believing that its action was not an FMLA violation. *See* § 2617(a)(1)(A)(iii). A plaintiff need not make any additional showing, such as willfulness on the part of the employer, to be entitled to liquidated damages. *See Bowyer*, No. 08-1496, 2010 WL 629830, at *6 (citing *Cooper Elec.*, 940 F.2d at 907). The fact that a plaintiff is automatically entitled to liquidated damages confirms Congress' desire to provide compensation to employees who have been delayed in receiving wages due to their employer's FMLA violation. *See Jordan*, 379 F.3d at 1202 (looking to the FLSA and concluding that liquidated damages under the FMLA are compensatory); *see also Smith v. AS Am., Inc.*, No. 12-5048, 2014 WL 3375466, at *1-2 (W.D. Mo. July 7, 2014) ("[T]he Court finds that the liquidated damage provision of the FMLA is compensatory, not punitive, in nature."); *Turner v. Sullivan Univ. Sys., Inc.*, 420 F. Supp. 2d 773, 780-81 (concluding that liquidated damages under the FMLA survived the death of the plaintiff). Accordingly, because liquidated damages under the FMLA are remedial and not penal, we conclude that Schonewolf's claim for them survives.

Waste Management cites numerous cases for the blanket proposition that liquidated damages are penal and abate at a plaintiff's death. (Def.'s Mem. of Law in Support Mot. Partial Dismissal 8.) The cases it cites, *Turner v. Schering-Plough Corp.*, 901 F.2d 335 (3d Cir. 1990), *Rickel v. C.I.R.*, 900 F.2d 655 (3d Cir. 1990), *Blum v. Witco Chem. Corp.*, 829 F.2d 367 (3d Cir. 1987), and *Hawes*, 940 F. Supp. 697, are all inapposite because each deals with liquidated damages under the ADEA. Plaintiffs are entitled to liquidated damages under the ADEA only in instances of willful violations of the Act. *See* 29 U.S.C. § 626(b) ("That liquidated damages shall be payable only in cases of willful violations of this chapter."). Moreover, the Supreme Court has held that "[t]he legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125 (1985).

The fact that an additional showing of willfulness is necessary for liquidated damages under the ADEA significantly supports our conclusion that such damages under the FMLA are remedial. Damages that are penal in nature are awarded to punish the defendant for its conduct and to deter it and others from similar conduct in the future. *See Keenan v. City of Phila.*, 983 F.2d 459, 478 (3d Cir. 1992). At common law, punitive damages are available for willful, wanton, or outrageous conduct. *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 409 (2009). It is not surprising, then, that the Supreme Court explicitly characterized ADEA liquidated damages as punitive, given that such damages may be awarded "only in cases of willful violations." *See Thurston*, 469 U.S. at 125 (citing 29 U.S.C. § 626(b)). Indeed, the legislative history of the liquidated damages provision of the ADEA confirms Congress' desire for deterrence of willful violations. *See id.* at 125-26 (citing 113 Cong. Rec. 2199 (1967)).

The ADEA's statutory language and legislative history regarding liquidated damages differentiates it significantly from the purpose of liquidated damages under the FMLA. As noted above, the FMLA was modeled after the FLSA and the two statutes have damages provisions that are similar. *See Jordan*, 379 F.3d at 1201-02. Unlike under the ADEA, in which liquidated damages are available only in cases of willful conduct, 29 U.S.C. § 626(b), plaintiffs are entitled to liquidated damages under the FMLA and FLSA automatically, *see id.* §§ 216(b), 260, 2617(a)(1)(A)(iii). The automatic trigger of liquidated damages under the FMLA shows Congress' desire to compensate employees in the delay of wages due to their employer's FMLA violation. *See Jordan*, 379 F.2d at 1202 (holding that liquidated damages under the FMLA serve the same purpose of liquidated damages under the FLSA because they compensate the employee "occasioned by the delay in receiving wages due caused by the employer's violation"). The analysis of the statutory construction and the legislative history of the FMLA, FLSA, and the ADEA strengthen the Court's conclusion that liquidated damages under the FMLA are remedial in nature. Accordingly, such damages survive the death of a plaintiff.

The final case that Waste Management relies on is *Dollar v. Smithway Motor Xpress, Inc.*, a case in which the Eighth Circuit stated in a footnote that "liquidated damages like those available in FMLA actions are punitive in nature." 710 F.3d 798, 811 n.4 (8th Cir. 2013) (citing *Newhouse v. McCormick & Co.*, 110 F.3d 635, 643 (8th Cir. 1997)). In *Dollar*, the district court held a bench trial and awarded the plaintiff back pay, liquidated damages, and front pay on account of the employer's liability for FMLA interference. *Id.* at 803, 805. On appeal, the Eighth Circuit reviewed the district court's determination of liability, the damage award in light of the plaintiff's failure to mitigate her damages, and whether the district court's award of front pay was overly speculative. *See id.* at 806-11. The award of liquidated damages itself played no

role in any of the issues on appeal, let alone whether such damages survive the death of a plaintiff. The *Dollar* court conducted no statutory or legislative analysis in its statement that liquidated damages under the FMLA are punitive. In fact, the case it cites for that proposition, *Newhouse*, held that liquidated damages *under the ADEA* are punitive in nature. *See Newhouse*, 110 F.3d at 643. The Eighth Circuit's reliance on *Newhouse* seems to be misplaced with regard to the FMLA, as *Newhouse* makes no mention of the FMLA whatsoever. As mentioned above, the liquidated damages provisions of the FMLA and ADEA serve entirely different purposes. Accordingly, we do not find *Dollar* to be persuasive on this issue.

In sum, the Court finds that liquidated damages under the FMLA are remedial and thus survived Schonewolf's death. Therefore, Waste Management's Motion to dismiss those damages is denied.

## IV. CONCLUSION

Although Schonewolf filed this action well in excess of ninety days after he presumably received the right-to-sue letter, we will afford him the opportunity to take discovery on the issue of whether the statutory filing period should be equitably tolled for purposes of the ADA and ADEA causes of action. We further find that Schonewolf may pursue liquidated damages under the FMLA, as those damages survived his death because of their remedial nature. As Schonewolf concedes, liquidated and punitive damages under the ADA and ADEA extinguished upon death, and we will dismiss those damages with prejudice. Accordingly, Waste Management's Motion for Partial Dismissal is granted in part and denied in part.

An appropriate Order follows.